UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION AT LEXINGTON**

MELINDA WILSON,                  )
                                 )
        Plaintiff,               )
                                 )          Civil Case No.
v.                               )          5:18-cv-547-JMH
                                 )
ANDREW SAUL, COMMISSIONER OF     )          **MEMORANDUM OPINION**
SOCIAL SECURITY,[1]              )              **AND ORDER**
                                 )
        Defendant.               )
                                 )

***

Plaintiff, Melinda Wilson, brings this matter under 42 U.S.C. § 405(g) seeking judicial review of an administrative decision of the Acting Commissioner of Social Security. [DE 1]. The Court, having reviewed the record and the motions, [DE 13, 15], filed by the parties, will **AFFIRM** the Commissioner's decision as no legal error occurred and it is supported by substantial evidence.

## I.    STANDARD FOR DETERMINING DISABILITY

Under the Social Security Act, a disability is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

---

[1] Andrew Saul was sworn in as the Commissioner of Social Security on June 17, 2019.  Still, Nancy Berryhill was serving as Acting Commissioner of Social Security when this action was filed. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner Saul is automatically substituted as a party.

months." 42 U.S.C. § 423(d)(1)(A). In determining disability, an Administrative Law Judge ("ALJ") uses a five-step analysis. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). Step One considers whether the claimant is still performing substantial gainful activity; Step Two, whether any of the claimant's impairments are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his past relevant work; and Step Five, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *Id.; see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

## II. PROCEDURAL AND FACTUAL HISTORY

On June 2, 2016, Plaintiff, Melinda Wilson, filed an application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act, asserting disability as of January 1, 2013. [TR 239]. The claim was denied initially and upon reconsideration. [TR 144-47, 155-57]. Wilson then pursued her claim in front of Administrative Law Judge ("ALJ") Greg Holsclaw on January 25, 2018. [TR 32-97, 97-108]. ALJ Holsclaw issued a decision on March 28, 2018, denying Wilson's claims and find that she was not disabled. [TR 11-25]. The

Appeals Council denied review. [TR 1-5]. This appeal followed pursuant to 42 U.S.C. § 405(g). [DE 1].

Consistent with the Court's Standing Scheduling Order, [DE 9; 11], the parties have submitted cross motions for summary judgment, which are ripe for review. [DE 13, 15].

Wilson alleges onset of disability as of October 15, 2015. [TR 239]. Wilson was 36 years of age as of the alleged onset date. [Id.]. Wilson has a 10th grade education and a GED. [TR 258]. Wilson engaged in past relevant work as a weigher: a position medium in exertion and semi-skilled. [TR 24].

Wilson claims disability due to a number of psychological and other impairments. [TR 13]. However, Wilson challenges only the ALJ's findings as they relate to her alleged psychological impairments, and thus we will only discuss them. [DE 13]. In particular, Wilson claims to be disabled as a result of her depression/mood disorder/adjustment disorder/bipolar disorder; anxiety; borderline personality disorder with history of cutting; schizophrenia (without psychotic symptoms; and post-traumatic stress disorder ("PTSD"). [TR 13-14]. Wilson testified that her primary limitations relate to her psychological issues. [TR 53].

Wilson testified that she often lives on the streets, uses public transportation, and has no place to stay. [TR 41-46]. She testified that she is scared to leave her house due to anxiety. [TR 57]. She does not have a driver's license as a result of a

DUI some ten years ago.  [TR 45].  She did not try to get her license back due to "nerve problems, anxiety."  [TR 46].

Wilson has received mental health treatment for many years. [TR 1388].  [TR 446-463, 1002-1039, 1170-1393, 1525-1536, 1537-1550, 1591-1605, 1626-1666]. In 2015, Wilson received treatment with the Comprehensive Care Center.  [TR 1257].  On December 2, 2015, she reported to the emergency room after threatening to kill herself.  [TR 776].  There she reported that she was not receiving appropriate treatment and was transferred to Eastern State Hospital.  [TR 381].  She was discharged three (3) days later. [TR 354].  Wilson had a "sudden turn around[,]" and was subsequently released.  [TR 351].  Afterwards, she was treated at BlueGrass Clinic for several months.  [TR 467-511].

In April 2016, Wilson received treatment, yet again, at the Comprehensive Care Center.  [TR 1239].  Wilson was hospitalized at Lake Cumberland Regional Hospital in June 2016 as a result of alleged hallucinations.  [TR 817].  Wilson was released on June 30, 2016, but had follow-up therapy appointments on June 30 and July 7, 2016. She was hospitalized on July 7, 2016 for attempting to overdose.  [TR 871].

Wilson received treatment from a psychologist, who prescribed Geoden to Wilson.  [TR 1035].  Wilson later reported that this prescription had improved both her mood and her anxiety.  [TR 1005, 1009].  In October 2016, Wilson returned to Comprehensive Care

Center after learning that her sister had been murdered. [TR 1010]. As a result, that same month she was hospitalized for ten days. [TR 1104, 1123, 1129].

Wilson was taken off her medication, [TR 1172], and ultimately stopped going to therapy. [TR 1525]. In July 2017, her treatment began again when her family doctor prescribed her Remeron and later Abilify instead of Geoden. [TR 1526-46]. In follow-up appointments, she was reported as doing well on these medications. [TR 1543, 1633, 1641, 1649, 1657, 1666]. However, on two occasions, one in September and another in October of 2017, Wilson sought treatment for her psychological conditions, but refused hospital admission. [TR 1608, 1597].

In November 2017, she requested a referral to a psychiatrist. [TR 1626]. Wilson reported to her primary care physician that her medications were working well, though she reported hallucinations to another provider. [TR 1591, 1602].

Drs. Jane Brake, Ph.D., and Ilze Sillers, Ph.D., reviewed the record in July and December 2016, respectively, and opined that Wilson could understand and recall simple and familiar work instructions; sustain attention, concentration, and persist for simple familiar tasks; and interact frequently with supervisors and peers and occasionally with the public. [TR 121, 140].

After the hearing and considering all the evidence, the ALJ issued his decision on March 28, 2018. [TR 25]. At Step One, the

ALJ determined that Wilson has not engaged in substantial gainful activity since May 12, 20146. [TR 13]. At Step Two, the ALJ found that Wilson suffered from the following severe impairments: degenerative disc disease; fibromyalgia/bilateral asymmetric polyarthritis, obesity; hypertension; carpal tunnel syndrome; Barrett's esophagus; constipation/irritable bowel syndrome/peptic ulcer disease/gatroparesis and GERD with history of cholecystectomy; history of bronchitis/sub-massive pulmonary embolism/MRSA pneumonia in context; depression/mood disorder/adjustment disorder/bipolar disorder; anxiety; borderline personality disorder with history of cutting; schizophrenia (without psychotic symptoms; and post-traumatic stress disorder ("PTSD"). [TR 13-14].

But, at Step Three, the ALJ found that none of those impairments or combination or impairments met or medically equaled the severity of any of the listed impairments. [TR 14-15]. In reaching this conclusion, ALJ Holsclaw found that Plaintiff had not satisfied the criteria of Listings 1.02, 1.04, 3.02, 4.0, 5.06, 11.4, 12.03, 12.04, 12.06, 12.08, and 12.15.

Before proceeding to Step Four, the ALJ found that Wilson had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b). Specifically, the ALJ found Plaintiff could perform the following tasks:

6

No lifting/carrying more than 20 pounds
occasionally, 10 pounds frequently; no
standing/walking more than six hours out of an
eight-hour day; no sitting more than six hours
out of an eight-hour day; can do unlimited
pushing/pulling up to the exertional
limitations; can do unlimited balancing, no
more than occasional stooping, kneeling,
crouching, crawling or climbing ramps or
stairs, but no climbing ladders, ropes or
scaffolds; no more than frequent fingering or
handling bilaterally; no work in areas of
concentrated dusts, fumes, gases or other
pulmonary irritants; no work in areas of
concentrated full-body vibrations or use of
vibrating hand tools; no work around
dangerous, moving machinery or unprotected
heights; no more than simple, routine work;
can persist in attention, concentration and
pace for two-hour intervals necessary to
complete simple tasks; no more than occasional
interaction with co-worker or supervisor, but
no more than occasional contact with the
general public; and no more than occasional
changes in the workplace setting.

[TR 17-18].

ALJ Holsclaw then concluded, at Step Four, that Wilson unable

to perform any past relevant work as a weigher: a position medium

in exertion and semi-skilled. [TR 24]. The ALJ relied on the

testimony of a Vocational Expert ("VE"), in finding that the

demands of this work exceed Wilson's residual functional capacity.

[Id.]. In addition, the ALJ determined that given Wilson's age,

limited education, work experience, and RFC, "there are jobs that

exist in significant numbers in the national economy that the

claimant also can perform." [Id.]. Again, ALJ Holsclaw based his

conclusion on testimony the VE that Wilson could be able to perform the requirements of occupations such as checker (28,000 jobs nationally), small parts assembly (40,000 jobs in the national economy), and sorter (731,000 jobs nationally).  Thus, the ALJ determined that, based on Wilson's age, education, work experience, RFC, that Wilson was not disabled under the Social Security Act.  [TR 25].

In the instant action, Wilson argues that, in making his factual findings, ALJ Holsclaw "ignored evidence documenting the severity of Ms. Wilson's mental impairments."  [DE 13-1 at 9, PageID #1787].  The Commissioner contends that the ALJ's decision was proper and should be affirmed.  [DE 15].

### III. STANDARD OF REVIEW

When reviewing the ALJ's ruling, this Court may not "'try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.'"  *Ulman v. Comm'r of Soc. Sec*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)).  This Court determines only whether the ALJ's ruling is supported by substantial evidence and was made pursuant to proper legal standards. *Cutlip v. Sec'y of Health & Human Servs*., 25 F.3d 284, 286 (6th Cir. 1994).  "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*.  We are to

affirm the decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

## IV. ANALYSIS

### A. The ALJ's Determination that Wilson was able to Perform Light Work is Supported by Substantial Evidence.

Wilson challenges "[t]ALJ's finding that Wilson's mental impairments do not seriously interfere with her ability to function in the home, social and work settings is not supported by substantial evidence." [DE 13-1 at 15, PageID #1793]. We disagree.

The ALJ considers residual function capacity between steps three and four of the sequential analysis. The RFC is "the most [she] can do despite [her] impairments. *See* 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a)(1), (5). The RFC finding is an administrative finding of fact, assessed by the ALJ, who is required to make this assessment "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). The ALJ is required to consider all medically determinable impairments, both severe and non-severe, in determining residual function capacity. 20 C.F.R. § 404.1545(a)(2).

Here, as noted above, the ALJ found that Wilson had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b). [TR

17-18].  Specifically, the ALJ found Plaintiff could perform the following tasks:

> No lifting/carrying more than 20 pounds occasionally, 10 pounds frequently; no standing/walking more than six hours out of an eight-hour day; no sitting more than six hours out of an eight-hour day; can do unlimited pushing/pulling up to the exertional limitations; can do unlimited balancing, no more than occasional stooping, kneeling, crouching, crawling or climbing ramps or stairs, but no climbing ladders, ropes or scaffolds; no more than frequent fingering or handling bilaterally; no work in areas of concentrated dusts, fumes, gases or other pulmonary irritants; no work in areas of concentrated full-body vibrations or use of vibrating hand tools; no work around dangerous, moving machinery or unprotected heights; no more than simple, routine work; can persist in attention, concentration and pace for two-hour intervals necessary to complete simple tasks; no more than occasional interaction with co-worker or supervisor, but no more than occasional contact with the general public; and no more than occasional changes in the workplace setting.

[Id].

Wilson challenges ALJ Holsclaw's finding, claiming it has no basis in evidence.  [DE 13-1 at 9, PageID #1787].  In particular, Wilson argues that the ALJ "failed to consider all of the evidence...ignored evidence documenting the severity of Ms. Wilson's mental impairments...[, and] avoided mention of the evidence supporting Wilson's claim." [Id.]

The Commissioner disagrees with Wilson.  The Commissioner argues that substantial evidence supports the ALJ's conclusion

that Wilson could perform simple routine work. [DE 15 at 6, PageID #1803]. Notably, the ALJ found that that Wilson's work capacity was limited to no more than occasional interaction with supervisors and the general public, and no more than occasional changes in the workplace setting. [TR 18]. This finding, the Commissioner argues, was supported by substantial evidence in the record. [DE 15 at 6, PageID #1803].

Notably, other than the citation to the ALJ's findings, Wilson fails to support her various arguments by citing to evidence in the in the administrative record. [DE 13-1]. This Court has held "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *Vasquez v. Astrue*, No. 6:12-CV-125-KSF, 2013 WL 1498895, at *6 (E.D. Ky. Apr. 11, 2013) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)); *see also Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006). For example, Wilson has made statements about what the underlying medical records indicate but fails to cite to any. [DE 13-1]. Instead, she makes vague references to them and generally cites "poor coping mechanisms" such as cutting, overdoses, and drug and/or alcohol abuse. [Id.].

At least some citation to the record is required for Wilson to demonstrate that she is entitled to relief.  Counsel must take the necessary step of pointing to specific instances where the ALJ erred and provide citations to the record that indicate that the ALJ's decision is not supported by substantial evidence.  Simply put, this Court is not required to scour the entire record, looking for evidence that may support of Wilson's claims.

Moreover, Wilson suggests the evidence of record could support a different conclusion than the one the ALJ reached, but this Court is not engaging in de novo review or reweighing the evidence on appeal.  Instead, the appropriate standard is whether the ALJ's findings are support by substantial evidence.  *Cutlip*, 25 F.3d at 286.  That standard is met "...if a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted).  When an ALJ's decision is based on substantial evidence, it is not subject to reversal even if substantial evidence would have supported the opposite conclusion. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012).

On the merits, there is no evidence before the Court that indicates that the ALJ erred, and after review of the relevant record evidence, it is clear the ALJ's decision is supported by substantial evidence.  The ALJ reviewed Wilson's medical history

and relied on substantial evidence—including, objective medical evidence, and opinion evidence by both examining and non-examining psychiatrists and psychologists—in determining that Wilson was not disabled and able to perform light work with some limitations. [TR 17-24]. Each of the issues raised by Wilson is addressed in turn below.

First, Wilson contests, [DE 13-1 at 10, PageID #1788], the ALJ's finding that Wilson was able to "understand, remember, and use new or familiar information, follow instructions, answer/ask questions, solve problems, use reasoning and use judgment with minimal modifications or adjustment." [TR 16]. She further contests, [DE 13-1 at 11, PageID #1789], the ALJ's finding that Wilson was "...able to maintain well-being by adapting to change, setting realistic goals, making plans, maintaining person hygiene, and being aware of hazards." [TR 16]. Finally, Wilson contests, [DE 13-1 at 11, PageID #1789], the ALJ's finding that Wilson "generally maintains the ability to meet personal responsibilities and the record is absent evidence of conduct deficits or inability to manage emotional reactions consistent with moderate limitations in adaptive behavior or managing herself." [TR 16].

In support, Wilson urges that "[t]here is not one piece of evidence in the record showing [she] can function independently." [DE 13-1 at 11, PageID #1789]. Wilson claims that she has no long term and supportive relationships, is regularly homeless, fights

13

with her significant other, has gone to jail, and has lost custody of her children. [Id.]. Moreover, she claims that she does not follow instructions, she cannot adapt to change, she does not follow advice, she has poor judgment skills, and she has limited ability to deal with stress, all of which she claims leads her to overdose on drugs, abuse alcohol, cut herself. [Id.].

Wilson fails to cite any evidence in the record to support the arguments she raises. Regardless, we find substantial evidence in the record to support the ALJ's findings. While the ALJ did note that Wilson's mental impairments can be exacerbated by situational stressors, [TR 19, 429, 467, 1183, 1425-27, 1452], Wilson's mental evaluations were otherwise normal, with normal speech, language, thought process, thought content, memory, and adequate concentration. [TR 19-20, 429, 467, 1007, 1011, 1183, 1426].

Next, Wilson contests, [DE 13-1 at 11-12, PageID #1789-90], the ALJ's finding that "Ms. Wilson has no more than moderate difficulties interacting with others because she socializes with family and can 'interact appropriately with retail and medical personnel.'" [TR 16]. In support, she claims that the record contains no evidence that she socializes with family, but that the record does contain evidence that she sleeps in a tent and fights with her girlfriend. [DE 13-1 at 11, PageID #1790]. Wilson further states that she "does not get along with medical

personnel," citing to her refusal to cooperate with hospital personnel and being "abrasive" with nursing staff." [Id.]; *see also*, [TR 766, 381].

Here, the ALJ's finding is supported by substantial evidence. Wilson relayed that she was able to have social interactions and can socialize with family and a few extended persons. [TR 277-285]. She further indicated that she is able to use public transportation and was able to go out and grocery shop for herself. [TR 75-76]. Moreover, in third-party function reports, Dolly Yocum, Wilson's then-girlfriend confirmed that Wilson has no problems with personal care and is able to prepare simple meals, do laundry, shop in the store, and manage money. [TR 16, 277-285, 299-307]. Thus, we find that ALJ's finding, that Wilson has no more than moderate difficulties interacting with others, was supported by substantial evidence. [TR 16].

Relatedly, Wilson contests, [DE 13-1 at 12, PageID #1790], the ALJ's notation that "[Wilson] had no apparent problems relating to other participants at hearing sessions." [TR 16]. In particular, she argues that this is an insufficient basis for finding that Wilson had "only a mild concentration limitation." [DE 13-1 at 12, PageID #1790].

In support, Wilson relies on *Martin v. Sec'y of Health and Human Servs.*, claiming that the ALJ should not have made this finding as "it amounts to a 'sit and squirm' test." [DE 13-1 at

12, PageID #1790]; *see also*, 735 F.2d 1008, 1010 (6th Cir. 1984). In *Martin*, the ALJ recommended denial of a claim related to back pain based solely on finding "claimant's candor to be excellent." *Id*. at 1010. However, the ALJ is entitled to rely on his or her own observations. *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). Moreover, unlike *Martin*, in this case, the ALJ relied on more than just Wilson's candor in her administrative hearing in finding that she has no more than moderate difficulties interacting with others.

Wilson further challenges, [DE 13-1 at 12-13, PageID #1790-91], the ALJ's finding that "[Wilson] is able to perform fundamental and instrumental daily activities (i.e. personal care, household chores, laundry, simple meal preparation, paying bills, etc.) without significant modification or adjustment..." [TR 16]. Here, Wilson claims there is "no evidence" that "Wilson was independently able to follow any routines or perform daily activities on a consistent or sustained basis." [DE 13-1 at 13, PageID #1791]. Moreover, she generally states that the evidence is "contrary to the ALJ's finding." [Id.].

While Wilson, again, cites no evidence from the record in support of her argument, she claims she is dependent on help from others for basic functioning. [Id.]. In particular, she states her mother took care of her medications, and her girlfriend supervised her. [Id.]. Wilson further relies on her alleged

overdoses, history of cutting, homelessness, and refusal to drive as a basis for her claim that the ALJ's finding is contrary to the evidence. [Id.].

We disagree with Wilson's argument. There is substantial evidence in the record to support the ALJ's finding that is able to perform fundamental and instrumental daily activities. [DE 16]. Here, the ALJ based his finding on Wilson's own statements, function report, and medical records. Notably, Wilson's argument is contradicted by her own statements, as reflected in the evidence. [TR 277-285]. For example, in her June 24, 2016 function report and in testimony, Wilson relayed that she was able to have social interactions and can socialize with family and a few extended persons. [TR 277-285]. She further indicated that she is able to use public transportation, and was able to go out and grocery shop for herself. [TR 75-76]. She also testified she can "cook just fine." [TR 75].

Moreover, in third-party function reports, Dolly Yocum, Wilson's then-girlfriend confirmed that Wilson has no problems with person care and is able to prepare simple meals, do laundry, shop in store, and manage money. [TR 16, 277-285, 299-307]. Consistent with these activities, the both her psychiatrist and state psychologists opined that Wilson had moderate limitation on limitation in social function, remembering simple instructions,

and sustaining concentration and persistence in simple tasks. [TR 121, 139].

If supported by substantial evidence, the ALJ's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.,* 482 F.3d 873, 876 (6th Cir.2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir.2007); *Longworth v. Comm'r Soc. Sec. Admin.,* 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health and Human Servs.,* 987 F.2d 1230, 1233 (6th Cir. 1993). Because the ALJ's findings are supported by substantial evidence we decline to remand.

**B.    The ALJ's Decision to Discount Wilson's Subjective Complaints Was Supported by Substantial Evidence.**

Lastly, Wilson argues that the ALJ erred [DE 13-1 at 14, PageID #1792], in finding Wilson's testimony was "less than persuasive." [TR 18].   Wilson testified that her primary limitations relate to her psychological issues.  [TR 18, 53, 57-59, 60]. She testified she has auditory and visual hallucinations, as well as paranoia and mood disturbance.  [TR 18, 57-59, 60]]. As a result, she claims she is unable to function in every day life although she does acknowledge some reduction in symptoms with prescribed medication.  [Id.].

Here, the ALJ found that Wilson's "statements and testimony about her psychological conditions, symptoms, and the resultant

limitations is less than persuasive." [TR 18]. The ALJ further noted that "[t]he issue is not whether she experienced these symptoms, but whether they have persisted with a disabling degree of frequency, severity, and duration." [Id.]. The ALJ found that the evidence of record "fails to document or support that the claimant's basic abilities to think, understand, communicate, concentrate, get along with other people, and handle normal work stress have ever been significantly impaired or documented on a long-term basis." [Id.].

Wilson disagrees. She claims the ALJ's finding is based on a "deficient consideration of the evidence." [DE 13-1]. Wilson claims that the ALJ mentioned "almost nothing" about Wilson's persistent cutting and hallucinations, despite her claim that the record shows Wilson has poor coping mechanism such as cutting, overdoses, and drug and alcohol abuse. [Id].

Regardless, the Sixth Circuit has held that the ALJ's evaluation of a claimant's testimony is entitled to deference by this Court. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007). As stated previously, "The Court may not re-weigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion." *Putman v. Astrue*, 2009 WL 838155 at *5 (E.D. Tenn. Mar. 30, 2009). So long as the ALJ cited substantial evidence to support his conclusions, this Court

may not re-evaluate his determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

In doing so, the ALJ is entitled to rely on her own observations. *Halter*, 246 F.3d at 773. In addition, the ALJ may also discount witness credibility when a claimant's testimony contradicts the medical records and other evidence. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

In the instant case, the ALJ found that the evidence reflects a history of medication use and formal mental treatment. [TR 19, 446-463, 1002-39, 1170-1393, 1525-1550, 1591-1605, 1626-1666]. However, the bulk of the treatment records note no more than moderate limitations, [TR 19, 1260-61, 1278, and 1310], with only one noting serious symptoms. [TR 19, 1302].

In sum, the ALJ "is not required to analyze the relevance of each piece of evidence individually. Instead, the regulations state that the decision must contain only 'the findings of facts and the reasons for the decision.' " *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 855 (6th Cir. 2011) (quoting 20 C.F.R. § 404.953). Contrary to Wilson's perfunctory assertion to the contrary, the ALJ's written decision indicates that he engaged in an in-depth review of the medical evidence and that the ALJ considered the relevant medical evidence when determining Wilson's "statements and testimony about her psychological conditions,

symptoms, and the resultant limitations is less than persuasive."
[TR 18].

The ALJ appropriately did so here. *See* 20 C.F.R. §
404.1529(c)(4) ("We will consider whether there are any
inconsistencies in the evidence and the extent to which there are
any conflicts between your statements and the rest of the evidence,
including your history, the signs and laboratory findings, and
statements by your treating and nontreating source or other persons
about how your symptoms affect you."); *see also*, *Torres v. Comm'r
of Soc. Sec.*, 490 F. App'x 748, 754 (6th Cir. 2012) (unpublished)
(allegations of impairments could be considered inconsistent with
claimant's own testimony about the daily activities she is able to
perform).

In sum, the Court finds that a "reasonable mind might accept"
the foregoing evidence as adequate to support the ALJ's
determination that Wilson has the ability to perform light work
with some restrictions. Accordingly, the ALJ's decision must stand
since it is supported by substantial evidence. *See Tyra v. Sec'y
of Health & Human Servs.*, 859 F.2d 1024, 1028 (6th Cir. 1990).

## C.  CONCLUSION

The Court, having found no legal error on the part of the ALJ
and that his decision is supported by substantial evidence, the
Acting Commissioner's final decision is **AFFIRMED.**

Accordingly, it is hereby **ORDERED** as follows:

(1) Plaintiff's Motion for Summary Judgment [DE 13] is **DENIED;**

(2) Defendant's Motion for Summary Judgment [DE 15] is **GRANTED;**

(3) Judgment in favor of the Defendant will be entered contemporaneously herewith.

This the 26th day of September, 2019.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge